UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

HAMED JOSEPH,

                 Petitioner,

v.

KEVIN RAYCRAFT et al.,

                 Respondents.

_____/

Case No. 1:26-cv-0672

HON. ROBERT J. JONKER

## OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1).  For the following reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## BACKGROUND

Petitioner was born in what is now South Sudan. (Pet., ECF No. 1, PageID.6.)  He was admitted to the United States as a refugee on June 21, 2000. (Resp., ECF No. 5, PageID.65.)  At that time, he was classified as a native and citizen of Sudan.  (*Id.*)  However, it appears that Petitioner does not currently hold citizenship to South Sudan or any other country.  (Pet., ECF No. 1, PageID.6.)  On January 13, 2005, Petitioner adjusted his immigration status in the United States to that of a lawful permanent resident. (Resp., ECF No. 5, PageID.65.)

Since that time, Petitioner has been arrested for and convicted of a variety of crimes.  On July 21, 2006, Petitioner was convicted of Resisting and Obstructing a Police Officer.  (*Id.*)  On

August 24, 2006, he was convicted of Resisting and Assaulting a Police Officer. (*Id.*) And on March 20, 2007, Petitioner was convicted of two crimes: Assault with Intent to Commit Second Degree Criminal Sexual Conduct and Receiving and Concealing Stolen Property. (*Id.*)

One result of these convictions is that Petitioner was repeatedly incarcerated; another result is that his immigration status was adjusted. (*Id.* at PageID.65–66.) Following his convictions for Assault with Intent to Commit Second Degree Criminal Sexual Conduct and Receiving and Concealing Stolen Property, the United States Immigration and Customs Enforcement (ICE) Detroit Field Office of Enforcement and Removal Operations (ERO) arrested Petitioner and served him with a Notice to Appear (NTA). The NTA charged Petitioner with removability under § 237(a)(2)(A)(ii)—for convictions of crimes of moral turpitude—and § 237(a)(2)(A)(iii)—for a conviction of an aggravated felony—of the Immigration and Nationality Act (INA). On March 24, 2009, an immigration judge ordered Petitioner to be removed to Sudan. (Resp., ECF No. 5, PageID.65.) Petitioner waived his right to appeal and the order became final. (*Id.*) After Petitioner was released from the Richard Handlon Correctional Facility in Ionia, Michigan, ICE took him into custody. (*Id.*)

In 2010, ERO submitted a passport application and contacted the Sudanese government multiple times to arrange Petitioner's removal. (*Id.* at PageID.66). When the Sudanese government was unresponsive, ICE considered whether continued detention of Petitioner was warranted. (Decision to Continue Detention, ECF No. 5-8, PageID.109.) On October 19, 2010, an ICE official determined that continued detention was warranted, and Petitioner was instructed to continue to take action to try to help achieve his removal. (*Id.*) When Petitioner was still not removed by January 26, 2011, ERO decided to release him on an order of supervision that required Petitioner to wear an ankle monitor. (Resp., ECF No. 5, PageID66).

Following his release on supervision, Petitioner was again arrested for and convicted of a number of different crimes. On February 14, 2011, Petitioner was convicted of Use of Marijuana. (*Id.* at PageID.66).  On January 10, 2014, Petitioner was convicted of Disorderly Person—Jostling. (*Id.*)  On March 17, 2014, Petitioner was convicted of Domestic Violence.  (*Id.*)  On December 28, 2015, Petitioner was arrested for Assault by Strangulation.  (*Id.*)  On August 30, 2016, Petitioner was arrested for Larceny.  (*Id.*)  And on November 29, 2021, he was again arrested for Larceny. (*Id.*).  Following most of these arrests or convictions, ERO would typically re-detain Petitioner for some length of time and then re-release him on conditions of supervised release.  (*Id.*)

On June 3, 2025, ERO re-arrested Petitioner and again began the process of trying to remove him.  (*Id.* at PageID.67).  On June 6, 2025, ERO submitted a travel document request to the Embassy of Sudan.  (*Id.*)  On July 24, 2025, the Embassy of Sudan denied the travel document request and asked that Petitioner provide information on family members that reside in Sudan. (*Id.*)  On August 6, 2025, ERO contacted Petitioner's brother to obtain such information.  (*Id.*)  On September 1, 2025, ERO conducted a 90-day Post Order Custody Review.  (*Id.*)  Due to Petitioner's criminal history, including violent crimes, ERO decided to continue Petitioner's detention because he was a flight risk and threat to public safety.  (*Id.*)  Four days later, ERO informed Petitioner that he needed to provide proof of his citizenship and travel documents or request a family member to contact the Embassy of Sudan to obtain such materials.  (*Id.*)  The Sudanese embassy again denied Petitioner a travel document.  (*Id.*)  On November 22, 2025, ERO headquarters (ERO HQ) conducted a second Post Order Custody Review and decided to further detain Petitioner because the panel did not believe he met the criteria for release as set forth in 8 C.F.R. § 241.4(e).  (*Id.*)  ERO served Petitioner with the Decision to Continue Detention on December 4, 2025.  (*Id.*)

Because the Sudanese embassy continually denied Petitioner travel documents, ERO began work to remove Petitioner to a third country on December 17, 2025.  (*Id.*)  Respondents state that ERO has followed up with its headquarters on February 13, 2026, and March 4, 2026, on the status of the third-country removal, but they allege that no response has yet been received.  (*Id.*)

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, among other things, assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner.  (Pet., ECF No. 1, PageID.20–22).  In an order entered on March 5, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted.  (Order, ECF No. 3).  Respondents filed their response (ECF No. 5) on March 26, 2026.

## HABEAS CORPUS LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States."  This includes challenges by non-citizens in immigration-related matters.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001);  *see also A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025).

## DISCUSSION

The parties agree that Petitioner is subject to a final order of removal.  As a result, Petitioner's present detention is governed by 8 U.S.C. § 1231.  However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment.  In

4

response, Respondents argue that Petitioner's continued detention for purposes of removal is authorized by *Zadvydas*.

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."  8 U.S.C. § 1231(a)(1)(A).  "During the removal period, the Attorney General shall detain the alien."  *Id.* § 1231(a)(2)(A).  8 U.S.C. § 1231(a)(6) further provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In *Zadvydas*, the Supreme Court considered whether 8 U.S.C. § 1231(a)(6) authorizes indefinite detention when no other country is willing to take a person who has been ordered removed.  533 U.S. at 682.  In answering that question, the Court noted that the purpose of the statute was to assure the "alien's presence at the moment of removal."  *Id.* at 699.  Therefore, the Court concluded that for post-removal-order detention to be authorized by the statute, the removal itself must be reasonably foreseeable.  *Id.*  The Court indicated that this inquiry would vary from case to case and that there was no specific point in time at which the detention became constitutionally impermissible.  *Id.*  Still, to assist the lower courts in making the difficult judgment calls about when the detention was no longer authorized by the statute, the Court designated six months as a "presumptively reasonable period of detention."  *Id.* at 701.  Even after six months has passed, though, the Court made clear that the alien may continue to be held unless the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.*

Under this framework, it is the petitioner's burden to come forward with evidence showing that removal is not significantly likely to occur sometime soon. *Id.* Only after the petitioner has come forward with such evidence does the burden flip to the respondents, who must then show evidence that the removal is, in fact, reasonably foreseeable. *See Abdalla v. Johnson*, No. 16-14422, 2017 WL 345731, at \*4 (E.D. Mich. Jan. 24, 2017) (rejecting Petitioner's claim that detention of more than a year violated *Zadvydas* when the petitioner "provide[d] no evidence" that removal was unlikely to occur in the near future).

Here, Petitioner has pointed to the fact that respondents have repeatedly tried—and failed—to obtain travel documents for Petitioner. (Pet., ECF No. 1, PageID.14.) Even assuming for the sake of argument that such evidence is sufficient to allow the petitioner to satisfy his burden under *Zadvydas*, the government has responded by showing that ICE Headquarters is actively attempting to remove Petitioner to a third country. (Szukhent Decl. ¶ 27, ECF No. 5-1, PageID.78) Thus, at this point in time, Petitioner is not in the state of "indefinite, perhaps permanent, detention" that the Court in *Zadvydas* said would violate the constitution. *Zadvydas*, 533 U.S. at 699; *see also Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020) (holding that a detention of over two years was constitutionally permissible because the removal was likely to occur once Petitioner's appeals were concluded).

The Court recognizes that continued detention may, over time, come to resemble the kind of indefinite confinement that *Zadvydas* may not permit. "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [has] to shrink." *Zadvydas*, 533 U.S. at 701. Courts applying this principle recognize that even where the Government continues to pursue removal in good faith, the passage of time can eventually erode the reasonableness of continued detention. *See Martinez*, 968 F.3d at 565 (explaining that

prolonged detention may become unreasonable if the petitioner later demonstrates that removal is no longer likely).

Here, however, the Court is not yet faced with that situation.  An immigration official has testified that the government remains in active discussions with a third country to coordinate Petitioner's removal.  Although nearly two months have passed since ICE Headquarters provided that update, such a length of time is not unreasonably long for negotiating and coordinating removal to a third country.  *See Abdalla*, 2017 WL 345731, at *4 (finding continued detention reasonable where the Government anticipated progress in the near future and no country had declined repatriation).  At this point, it seems to the Court that Petitioner's removal remains significantly likely in the reasonably foreseeable future.  Accordingly, the petition will be denied without prejudice. Should the Government's efforts to secure removal ultimately stall or fail to bear fruit, Petitioner remains free to file a new petition asserting that continued detention is no longer reasonable.

## CONCLUSION

For the reasons discussed above, the Court will enter a judgment dismissing Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

Dated:  April 6, 2026                          /s/ Robert J. Jonker
                                               Robert J. Jonker
                                               United States District Judge

7